**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SPIRTAS COMPANY D/B/A SPIRTAS WRECKING COMPANY, | ) ) ) | |
| Plaintiffs, | ) ) | |
| | ) | CAUSE NO.  11-CV-829 |
| vs. | ) ) | |
| NAUTILUS INSURANCE COMPANY, | ) ) | |
| Defendants. | ) | |

## ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant Nautilus Insurance Company ("Nautilus") through its attorneys, Hinshaw & Culbertson LLP, in Answer to the Petition states and alleges as follows:

## JURISDICTION AND VENUE

1.      Nautilus admits the allegations contained in paragraph 1 of the Petition.

2.      Nautilus admits the allegations contained in paragraph 2 of the Petition.

3.      Nautilus admits the allegations contained in paragraph 3 of the Petition.

4.      Nautilus admits the allegations contained in paragraph 4 of the Petition.

5.      Nautilus denies the allegations contained in paragraph 5 of the Petition to the extent Mo. Rev. Stat. § 508.040 has been repealed.

## FACTS COMMON TO ALL COUNTS

6.      In answer to paragraph 6 of the Petition, Nautilus admits that it issued policy number BK001033905 for the period from June 30, 2010 to June 30, 2011 ("the Policy") and that Exhibit 1 to the Petition purports to be a copy of the Policy.

7.      Nautilus admits the allegations contained in paragraph 7 of the Petition.

8.     Nautilus admits that the language quoted in paragraph 8 of the Petition appears in the Policy.  Nautilus further states that the Policy must be read in its entirety.

9.     Nautilus admits that the language quoted in paragraph 9 of the Petition appears in the Policy.  Nautilus further states that the Policy must be read in its entirety.

10.     Nautilus admits that the language quoted in paragraph 10 of the Petition appears in the Policy.  Nautilus further states that paragraph 10 of the Petition does not quote the definition of "property damage" in the Policy in its entirety and that the Policy must be read in its entirety.

11.     Nautilus admits that the language quoted in paragraph 11 of the Petition appears in the Policy.  Nautilus further states that the Policy must be read in its entirety.

12.     Nautilus admits that the language quoted in paragraph 12 of the Petition appears in the Policy.  Nautilus further states that paragraph 12 of the Petition does not quote the definition of "coverage territory" in the Policy in its entirety and that the Policy must be read in its entirety.

13.     In response to paragraph 13 of the Petition, Nautilus states that the Policy must be read in its entirety.  Nautilus denies that it is obligated to pay any sums to Spirtas under the Policy.

14.     In response to paragraph 14 of the Petition, Nautilus admits upon information and belief that Spirtas entered into a contract with Edward Kraemer & Sons, Inc. ("Kraemer"). Nautilus lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 14 of the Petition.

15.     Nautilus admits the allegations in paragraph 15 of the Petition upon information and belief.

12304825v1  0923251  75590

16.     In response to paragraph 16 of the Petition, Nautilus admits upon information and belief that Spirtas entered into a subcontract with Dykon Explosive Demolition Corporation ("Dykon").  Nautilus lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations contained in paragraph 16 of the Petition.

17.     In response to paragraph 17 of the Petition, Nautilus admits upon information and belief that the Seneca Bridge did not come down as planned during the attempted demolition. Nautilus denies that the Seneca Bridge was "damaged" for purposes of triggering coverage under the Policy.  Nautilus lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 17 of the Petition.

18.     Nautilus denies the allegations contained in paragraph 18 of the Petition.  Nautilus affirmatively alleges that on December 2, 2010, it received a notice of claim or circumstances which may give rise to a claim against Spirtas from Kraemer.

19.     In response to paragraph 19 of the Petition, Nautilus admits that it issued a letter to Spirtas on December 14, 2010 reserving its rights under the Policy in connection with Spirtas' notice of a potential claim and further admits that the language quoted in paragraph 19 of the Petition appears in the December 14, 2010 letter.  Nautilus further states that the December 14, 2010 letter must be read in its entirety.

20.     In response to paragraph 20 of the Petition, Nautilus denies that the Seneca Bridge was "damaged" for purposes of triggering coverage under the Policy.  Nautilus lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 20 of the Petition.

21.     Nautilus denies the allegations contained in paragraph 21 of the Petition.

12304825v1  0923251  75590

22.     In response to paragraph 22 of the Petition, Nautilus denies that the Seneca Bridge was "damaged" for purposes of triggering coverage under the Policy.  Nautilus lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in paragraph 22 of the Petition.

23.     Nautilus denies the allegations contained in paragraph 23 of the Petition.

24.     Nautilus denies the allegations contained in paragraph 24 of the Petition.

25.     Nautilus admits the allegations contained in paragraph 25 of the Petition.

26.     In response to paragraph 26 of the Petition, Nautilus admits that it sent a letter to Spirtas on April 6, 2011 reserving its rights under the Policy and that Exhibit 2 to the Petition purports to be a copy of that letter.  Nautilus further states that the April 6, 2011 letter must be read in its entirety.

27.     Nautilus denies that the letter referenced in paragraph 27 of the Petition constitutes a denial of coverage.  Nautilus affirmatively alleges that the Policy does not provide coverage for the alleged economic loss sustained by Spirtas and described in the Petition.

28.     Nautilus denies the allegations contained in paragraph 28 of the Petition.

<u>**COUNT I**</u>

<u>**DECLARATORY JUDGMENT**</u>

29.     Nautilus incorporates by reference paragraphs 1-28 as though fully set forth herein.

30.     Nautilus admits the allegations contained in paragraph 30 of the Petition.

31.     Nautilus denies the allegations contained in paragraph 31 of the Petition.

32.     Nautilus denies the allegations contained in paragraph 32 of the Petition.

33.     Nautilus denies the allegations contained in paragraph 33 of the Petition.

12304825v1  0923251  75590

34.     In response to paragraph 34 of the Petition, Nautilus admits that Spirtas seeks a determination that the Policy provides coverage for the $232,280.92 Bridge Claim and that Nautilus is required by the terms of the Policy to indemnify Spirtas for the Bridge Claim, but denies that Spirtas is entitled to such a determination.

35.     Nautilus admits the allegations contained in paragraph 35 of the Petition.

36.     Nautilus denies the allegations contained in paragraph 36 of the Petition.

37.     With respect to the relief requested under Count I, Nautilus denies that Spirtas is entitled to the relief requested.

**COUNT II**

**BREACH OF CONTRACT**

38.     Nautilus incorporates by reference paragraphs 1-37 as though fully set forth herein.

39.     In response to paragraph 38 of the Petition, Nautilus states that the Policy must be read in its entirety.  Nautilus denies that it is obligated to pay any sums to Spirtas under the Policy.

40.     Nautilus denies the allegations contained in paragraph 39 of the Petition.

41.     Nautilus denies the allegations contained in paragraph 40 of the Petition.

42.     Nautilus denies the allegations contained in paragraph 41 of the Petition.

43.     Nautilus denies the allegations contained in paragraph 42 of the Petition.

44.     Nautilus denies the allegations contained in paragraph 43 of the Petition.

45.     Nautilus denies the allegations contained in paragraph 44 of the Petition.

46.     Nautilus denies the allegations contained in paragraph 45 of the Petition.

47.     With respect to the relief requested under Count II, Nautilus denies that Spirtas is entitled to the relief requested.

12304825v1  0923251  75590

## COUNT III

### VEXATIOUS AND UNREASONABLE REFUSAL TO PAY UNDER MO. REV. STAT. § 375.420

48. Nautilus incorporates by reference paragraphs 1-47 as though fully set forth herein.

49. Nautilus admits the allegations contained in paragraph 47 and affirmatively alleges that at all times relevant to the acts complained of in the Petition, Nautilus has acted in good faith and dealt fairly with Spirtas under the Policy.

50. Nautilus denies the allegations contained in paragraph 48 of the Petition.

51. Nautilus denies the allegations contained in paragraph 49 of the Petition.

52. Nautilus denies the allegations contained in paragraph 50 of the Petition.

53. With respect to the relief requested under Count III, Nautilus denies that Spirtas is entitled to the relief requested.

### AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

54. Spirtas fails to state a claim for which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE

55. The Policy contains the following exclusions which may apply to limit or preclude coverage:

This insurance does not apply to:

**a.** **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

6

**b.**     **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.   This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement; or

**(2)**     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement.  Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)**     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)**     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

. . .

**j.**     **Damage To Property**

"Property damage" to:

 . . .

**(4)**     Personal property in the care, custody or control of the insured;

**(5)**     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

7

(6)     That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

. . .

m.     **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)     A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

## THIRD AFFIRMATIVE DEFENSE

56.     Any potential coverage may be limited or may not apply to the extent Spirtas has voluntarily made any payment, assumed any obligation or incurred any expense without the consent of Nautilus.

## FOURTH AFFIRMATIVE DEFENSE

57.     Any potential coverage under the Policy may be limited or may not apply to the extent Spirtas has failed to comply with the terms of the Contractors/Sub-contractors Warranty of Insurance endorsement.

## FIFTH AFFIRMATIVE DEFENSE

58.     Any potential coverage under the Policy is limited or does not apply, and Nautilus has no obligation to pay any amounts under the Policy, to the extent Spirtas has failed to properly exhaust its Self-Insured Retention by payment of damages, claim expenses or supplementary payments.

12304825v1  0923251  75590

## COUNTERCLAIM FOR DECLARATORY RELIEF

Defendant, Nautilus Insurance Company ("Nautilus"), by and through its undersigned counsel, and for its Counterclaim for Declaratory Relief against Spirtas Company d/b/a Spirtas Wrecking Company ("Spirtas"), states and alleges as follows:

## PARTIES, JURISDICTION AND VENUE

1.      Nautilus is an Arizona corporation with its principal place of business in Arizona.

2.      Spirtas is a Missouri corporation with its principal place of business in St. Louis County, Missouri.

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.  There is diversity of citizenship between the parties and the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000).

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 2201.

5.      Venue is proper in this judicial district because Spirtas is a Missouri corporation with its principal place of business in St. Louis County, Missouri.

## FACTS

6.      Upon information and belief, in February of 2010, Spirtas entered into a contract with Edward Kraemer and Sons, Inc. ("Kraemer") to perform a portion of the demolition of the Seneca Bridge over the Illinois River.

7.      Upon information and belief, in November of 2010, Spirtas entered into a subcontract with Dykon Explosive Demolition Corp. ("Dykon") under which Dykon agreed to perform work in connection with the Seneca Bridge demolition project.

8.      Upon information and belief, the subcontract agreement between Spirtas and Dykon required Dykon to, among other things, defend, indemnify and hold harmless Spirtas

12304825v1  0923251  75590

from and against any and all claims, demands, losses, damages, attorney fees and expenses caused by or resulting from any act or omission of Dykon, its agents, employees, or Subcontractors arising out of Dykon's work on the Seneca Bridge demolition project.

9.    Upon information and belief, the subcontract agreement between Spirtas and Dykon further required that Dykon maintain certain insurance providing coverage to it in connection with the Seneca Bridge demolition project and that Spirtas be named as an additional insured on any such policy.

10.    Upon information and belief, Dykon secured commercial general liability insurance from Liberty International Underwriters, policy no. DGLCH184353065 with a policy period from October 6, 2010 to October 6, 2011, which names Spirtas as an additional insured.

11.    Upon information and belief, the demolition of the Seneca Bridge, set to take place on or about November 18, 2010, did not go as planned, and some number of the explosive charges failed to detonate.

12.    On December 2, 2010 Nautilus, through its underwriting manager, Berkeley Specialty Underwriting Managers LLC, received a notice of potential claim from Kraemer under the Policy and reporting circumstances which may give rise to a claim against Spirtas in connection with Spirtas' failure to perform under the contract.  A copy of this December 2, 2010 letter is attached hereto as **Exhibit A**.

13.    Included in the materials provided by Kramer was a November 26, 2010 letter from Kraemer to Spirtas detailing Kraemer's alleged economic loss resulting from Spirtas' failure to perform under the contract.  A copy of this November 26, 2010 letter is attached hereto as **Exhibit B**.

12304825v1  0923251  75590

14.     On December 14, 2010, Nautilus issued a letter to Spirtas acknowledging receipt of the letter from Kraemer relating to a potential claim under the Policy.  Because no party had actually made a claim for property damage arising out of the Seneca Bridge demolition project, Nautilus informed Spirtas that it would treat the matter as a potential claim, and reserved all rights under the Policy.  A copy of this December 14, 2010 letter is attached hereto as **Exhibit C**.

15.     On or about March 21, 2011, Nautilus received a package of additional information indicating that Kraemer had assessed a "backcharge" for costs it claimed were incurred as a result of Spirtas' failure to perform under the contract.

16.     In response to that submission, Nautilus issued a reservation of rights letter dated April 6, 2011.  In the April 6, 2011 letter, Nautilus reiterated that it had not received any third-party claims, and advised Spirtas that Nautilus' investigation was continuing under a complete reservation of rights.  A copy of the April 6, 2011 letter is attached hereto as **Exhibit D**.

17.     In response to Nautilus' April 6, 2011 reservation of rights letter, Spirtas filed a lawsuit against Nautilus in the Circuit Court of St. Louis County seeking a declaratory judgment that it is entitled to coverage for alleged damages arising out of the Seneca Bridge demolition project.  Spirtas also alleged counts for breach of contract and vexatious and unreasonable refusal to pay under Mo. Rev. Stat. § 375.420.

18.     Specifically, Spirtas alleged that it was forced to pay $81,995.95 in additional costs on the Seneca Bridge demolition job because of its failure to perform under its contract with Kraemer, and that these additional costs constitute sums that Spirtas was legally obligated to pay as damages because of property damage, triggering Nautilus' duty to indemnify Spirtas under the Policy.

19.    Spirtas further alleged that on February 17, 2011, Kraemer informed Spirtas that it was withholding $150,328.97 from Spirtas as a backcharge because of Spirtas' failure to perform under the contract, and that this backcharge constitutes a sum that Spirtas was legally obligated to pay as damages because of property damage, triggering Nautilus' duty to indemnify Spirtas under the policy.

20.    Spirtas also alleged that Nautilus' April 6, 2011 letter constituted a denial of the $232,280.92 claim for alleged damages incurred because of its failure to perform under its contract with Kraemer and that, by refusing to pay the claim, Nautilus failed to meet its duty under the Policy to indemnify Spirtas.

## THE COVERAGE

21.    Nautilus Insurance Company provided Commercial General Liability coverage to Spirtas Company under policy number BK001033905, for the policy period of June 30, 2010 to June 30, 2011.  The coverage was subject to a $1,000,000 limit of liability that applies to each "occurrence" and was provided through form number CG 00 01 12 04.  A copy of the Policy is attached hereto as **Exhibit E** and incorporated herein by reference.

22.    The insuring agreement to the policy provided:

**SECTION I – COVERAGES**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion,

12304825v1  0923251  75590

investigate any "occurrence" and settle any claim or "suit" that may result.  But:

**(1)**     The amount we will pay for damages is limited as described in Section **III** - Limits Of Insurance; and

**(2)**     Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

**b.**     This insurance applies to "bodily injury" and "property damage" only if:

**(1)**     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)**     The "bodily injury" or "property damage" occurs during the policy period; and

**(3)**     Prior to the policy period, no insured listed under Paragraph **1.** of Section **II** - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**c.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

12304825v1  0923251  75590

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**e.** Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

23.      To fall within this insuring agreement, the claim must seek to recover sums that Spirtas has become "legally obligated to pay" as "damages" for "property damage" resulting from an "occurrence."

24.      The amounts claimed by Spirtas do not represent "damages," or sums that Spirtas has become "legally obligated to pay" as those terms are used in the Policy.

25.      In addition, the expenses are unrelated to "property damage," a term defined as follows:

**17.** "Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

14

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

26.     The term "occurrence" is defined as follows:

**13.**     "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

27.     The amounts claimed by Spirtas do not represent compensation paid to others for "property damage" caused by an "accident," and Spirtas has not alleged any covered "occurrence" as that term is defined by the Policy.

28.     The amounts claimed by Spirtas arose out of the intentional act of demolishing the Seneca Bridge.  Accordingly, even if Spirtas could establish that its claim falls within the Policy's insuring agreement, the following exclusion would apply:

This insurance does not apply to:

**a.     Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

29.     The Policy also incorporates the following exclusions, which operate to limit or preclude coverage:

This insurance does not apply to:

. . .

**j.     Damage To Property**

"Property damage" to:

15

. . .

    **(5)**    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

    **(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

30.    The Seneca Bridge was the "particular part of real property" on which Spirtas was performing operations at the time of the incident.

31.    In addition, all of the alleged damages at issue occurred because Spirtas' "work" was incorrectly performed upon the Seneca Bridge.  The Nautilus policy defines Spirtas' "work" as follows:

    **22.**    "Your work":

    **a.**    Means:

      **(1)**    Work or operations performed by you or on your behalf; and

      **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes

      **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

      **(2)**    The providing of or failure to provide warnings or instructions.

32.    The policy also incorporates the following exclusion that operates to limit or preclude coverage:

    This insurance does not apply to:

      . . .

12304825v1  0923251  75590

      **m.**      **Damage To Impaired Property Or Property Not Physically Injured**

      "Property damage" to "impaired property" or property that has not been physically injured arising out of:

      **(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

      **(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

      This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

33.      The term "impaired property" is defined as:

      **8.**      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      **a.**      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      **b.**      You have failed to fulfill the terms of a contract or agreement;

      if such property can be restored to use by:

      **a.**      The repair, replacement, adjustment or removal of "your product" or "your work"; or

      **b.**      Your fulfilling the terms of the contract or agreement.

34.      The alleged damages claimed by Spirtas are the result of a "defect, deficiency, inadequacy or dangerous condition" in Spirtas' "work" or the delay or failure of Spirtas "to perform a contract or agreement in accordance with its terms."

35.      The Policy includes the following "Other Insurance" provision:

12304825v1  0923251  75590

**4.**     **Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.**     **Primary Insurance**

This insurance is primary except when **b.** below applies.  If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary.  Then, we will share with all that other insurance by the method described in **c.** below.

**b.**     **Excess Insurance**

This insurance is excess over:

**(1)**     Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(a)**     That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(b)**     That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(c)**     That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(d)**     If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(2)**     Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured by attachment of an endorsement.

18

When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit".  If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

**(1)**     The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)**     The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c.     Method of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also.  Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits.  Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

36.     Alternatively, in the event that Nautilus is obligated to provide coverage to Spirtas, this coverage would be excess over the other insurance available to Spirtas in connection with the Seneca Bridge demolition project.

37.     To the extent other terms, conditions and exclusions may apply to limit or preclude coverage under the Policy, Nautilus reserves all rights to rely on such terms, conditions

and exclusions, and expressly incorporates all terms, conditions and exclusions in the Policy attached hereto as **Exhibit E**.

<u>**COUNT ONE – DECLARATORY RELIEF**</u>

38.     Nautilus realleges and incorporates by reference the allegations set forth in paragraphs 1-37 of the Counterclaim.

39.     There is a justiciable controversy between Nautilus and Spirtas as to whether the Policy provides coverage to Spirtas relative to its claim for alleged economic losses arising out of its failure to perform under its contract with Kraemer.

40.     Nautilus seeks a declaration that it does not owe a duty to indemnify Spirtas for the alleged economic losses arising out of Spirtas' failure to perform under its contract with Kraemer.

41.     Nautilus seeks a declaration that the amounts claimed by Spirtas do not represent "damages," or sums that Spirtas has become "legally obligated to pay" as those terms are used in the Policy.

42.     Nautilus seeks a declaration that the amounts claimed by Spirtas do not represent compensation paid to others for "property damage" caused by an "accident," and that Spirtas has not alleged any covered "occurrence" as that term is defined by the Policy.

43.     Nautilus seeks a declaration that the "expected or intended injury" exclusion bars coverage under the Policy for Spirtas' alleged loss.

44.     Nautilus seeks a declaration that the exclusion for "property damage" to "that particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations" bars coverage under the Policy for Spirtas' alleged loss.

20

45.     Nautilus seeks a declaration that the exclusion for "property damage" to "that particular part of any property that must be restored, repaired or replaced because your work was incorrectly performed on it" bars coverage under the Policy for Spirtas' alleged loss.

46.     Nautilus seeks a declaration that the exclusion for "property damage to impaired property or property that has not been physically injured" bars coverage under the Policy for Spirtas' alleged loss.

47.     In the alternative, Nautilus seeks a declaration that it provides excess coverage only.

## **RELIEF REQUESTED**

WHEREFORE, Nautilus respectfully requests that this Court find and declare that:

1.     Nautilus does not owe a duty to indemnify Spirtas for the amounts claimed.

2.     And for such further or different relief as the Court deems just and equitable.

12304825v1  0923251  75590

**HINSHAW & CULBERTSON LLP**


By: _____/s/ JOHNNY S. WANG_____
JOHNNY S. WANG
EDMO BAR #57748MO
Gateway One
701 Market Street, Suite 1300
St. Louis, MO 63101-1843
P: 314-241-2600
F: 314-241-7428
jwang@hinshawlaw.com

and

Bethany K. Culp, Minn. Reg. 154891
Daniel N. West, Minn. Reg.
333 South Seventh Street, Suite 2000
Minneapolis, MN 55402
Telephone:  612-333-3434
Fax:  612-334-8888
bculp@hinshawlaw.com
dwest@hinshawlaw.com

ATTORNEYS FOR DEFENDANTS
NAUTILUS INSURANCE COMPANY

22

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing document was electronically filed and also placed in a sealed envelope, clearly addressed, with proper postage fully prepaid, and deposited in the United States Mail at St. Louis, Missouri, on this 10th day of May, 2011, addressed to the following attorney(s) of record:

Timothy E. Hayes
Thomas M. Payne III
231 S. Bemiston Avenue
Suite 950
St. Louis, MO 63105
Attorneys for Plaintiff


      /s/ JOHNNY S. WANG

23